IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| **FEDERAL EXPRESS CORPORATION,** | ) | |
| **Plaintiff,** | ) | |
| v. | ) | |
| **ACCU-SORT SYSTEMS, INC.,** | ) | |
| **Defendant.** | ) | |
|  | ) | **No. 01-2503 Ma/P** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT ACCU-SORT SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT**

On May 31, 2005, Defendant Accu-Sort Systems, Inc. ("Accu-Sort") filed a motion for summary judgment on Plaintiff Federal Express Corporation's ("FedEx") remaining trade secret claim, remaining breach-of-contract claims, unjust enrichment claim, and breach of fiduciary duty claim. FedEx responded on July 05, 2005. Accu-Sort filed a reply memorandum in support of its motion for summary judgment on July 22, 2005. For the following reasons, Accu-Sort's motions are GRANTED in part and DENIED in part.

**I. Jurisdiction and Venue**

Plaintiff FedEx is a corporation organized under the laws of Delaware with its principal place of business in Memphis, Tennessee. (Third Am. Compl. ¶ 1.) Accu-Sort is a corporation

organized under the laws of Pennsylvania with its principal place of business in Telford, Pennsylvania. (Id. ¶ 2.) The amount in controversy exceeds $75,000. (Id.) Therefore, the requirements of diversity jurisdiction under 28 U.S.C. § 1332 are satisfied. Venue is proper in this district under 28 U.S.C. § 1391(a)(2).

The facts of this case have been described at length in the court's order of March 30, 2005. As the court discussed in that order, Tennessee law applies.

**II. Summary Judgment Standard**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must

"do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, the nonmoving party must present "concrete evidence supporting its claims."  Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).  The district court does not have the duty to search the record for such evidence.  See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor.  See id.

### III. Analysis

#### A. FedEx's Remaining Trade Secrets Claim

Accu-Sort contends that FedEx does not have a trade secrets claim because Accu-Sort has never used the Fresnel lens or the independent-focus technology in the NSDS system it sold to United Parcel Service, Inc. ("UPS"). (Accu-Sort's Memo in Supp. of Mtn. for Summ. J. at 2-3.) FedEx admits that it does not have a claim for trade secret misappropriation of the Fresnel lens technology. FedEx alleges however, that it does have evidence that Accu-Sort misappropriated aspects of FedEx's independent-focus technology. (FedEx Resp. to Mtn. for Summ. J. at 2.) Because FedEx no longer claims trade secret misappropriation of the Fresnel lens

3

technology, Accu-Sort's motion is GRANTED as to the Fresnel lens claim.

As to the independent-focus trade secret, FedEx offers the deposition testimony of Brett Bonner, a 30(b)(6) deponent for FedEx, as evidence of Accu-Sort's misappropriation. (FedEx's Resp. to Mtn. for Summ. J. at 2.) Accu-Sort offers the deposition of O.P. Skaaksrud ("Skaaksrud"), a 30(b)(6) deponent for FedEx, who states that Accu-Sort did not use the Fresnel lens or independent-laser-focus technology in the NSDS system it sold to UPS. (Accu-Sort's Memo. in Supp. of Mtn. for Summ. J. at 4.)

> Q. It is the independent focus that Federal Express is claiming is one of its trade secrets, correct?
> A. That is correct.
> Q. You understand–do you understand that the systems that have been sold to UPS by Accu-Sort involve an Quad X scanner?
> A. Yes, I understand that to be the scanner that they have selected, yes.
> Q. And Federal Express has purchased Quad X scanners, correct?
> A. Yes. As far as I know, yes.
> Q. You have seen an Quad X scanner, correct?
> A. Yes.
> Q. And you know that the Quad X scanner does not independently focus its beams; correct?
> A. As far as I know, that is correct.

(App., Ex. A (March 3, 2005 deposition of Skaaksrud) Accu-Sort's Memo. in Supp. of Mtn. for Summ. J. at 246.)

Bonner states that Skaaksrud's answers were based only on the documents he had seen and that later documents revealed Accu-Sort's misappropriation. (App., Ex. B, Depo. of Brett Bonner dated June 30, 2005, FedEx Resp. to Mtn. for Summ J., pp 19-23.) The specific

pages in Bonner's deposition cited by FedEx do not establish materially disputed facts. After reviewing the entire deposition, however, the court concludes that material facts are disputed. The best summary is found on page 103:

> Q. Can you-I said please describe for me everything that Accu-Sort's NSDS system does that you think falls within this third category of trade secrets. Give me a list of everything that NSDS does that you were going to say is your trade secret.
> A. Sure. Okay. It transmits head, leg, and bar code data and Relpos data in conjunction with a shaft encoder data to a control program.
> The dimensioners transmit height information in relationship to shaft encoder data to a control program. The control program turns around, and using a coordinate system established during calibration using FedEx methods and techniques, does several things.
> It first determines a – and let me say that I don't know the exact order of progression that Accu-Sort has in their NSDS, so I'm really just telling you things that it must do.
> It at some time must determine an intersection between a derived box surface and a read bar code label. At that time it could accurately locate each bar code on a particular package.

(App., Ex. B, Depo. of Brett Bonner dated June 30, 2005, FedEx Resp. to Mtn. for Summ J., pp 103-104.)

Bonner's contention is explained in his analysis of similarities between the Quad X, Omni X, and MSDS technology. (App., Ex. B, Depo. of Brett Bonner dated June 30, 2005, FedEx Resp. to Mtn. for Summ J., pp 38-52.) Thus, his deposition is sufficient evidence of Accu-Sort's alleged misappropriation to warrant a jury finding in favor of FedEx. Accu-Sort's motion for summary judgment on the independent-focus technology claim is

5

DENIED.

**B. FedEx's Breach of Contract Claims**

FedEx's contract claims against Accu-Sort can be divided into two categories: "confidentiality contract claims" and "ownership contract claims." (See Third Amended Compl.) The "confidentiality contract claims" are based on the Non-Disclosure Agreement of September 27, 1994, and the Consulting Agreement of August 10, 1994. (Id. Counts One and Five.) The "ownership contract claims" are based on Accu-Sort's alleged breach of the ownership provision in the Consulting Agreement by failing to turn over and assign to FedEx certain materials and/or intellectual property rights associated with those materials. (Id. Count Three.)

**1. Confidentiality Contract Claims**

Accu-Sort argues that the Non-Disclosure agreement was limited to information "brought to the table" in 1994, years before Andy Jankevics, Senior Systems/Software Engineer for Adaptive Optics Associates, Inc. ("AOA"), allegedly developed the purported calibration trade secret. Therefore, Accu-Sort argues that the Non-Disclosure Agreement is applicable only to information acquired as of 1994. Jankevics allegedly developed the calibration trade secret in 1996. (Accu-Sort's Memo in Supp. of Mtn. for Summ. J. at 6.) The court in its July 6, 2005 Order (the "July 6, 2005 Order") decided that "FedEx has offered sufficient evidence that Accu-Sort was obligated to keep the calibration technology confidential" to

defeat summary judgment. (July 6, 2005 Order at 7.) The court specifically noted that the Mutual Non-Disclosure Agreement provides as follows:

> Each party acknowledges that *all material and information which has or will come into its possession or knowledge* after Accu-Sort [sic] in connection with business discussions, conferences or other activities in pursuit of a business relationship between [FedEx] and Accu-Sort (i) is proprietary to the disclosing party ... (ii) is secret, confidential and unique, and constitutes the exclusive property of the disclosing party .... [E]ach party agrees to hold the other's Confidential Information in strictest confidence and not to make use of it other than for the benefit of the other party.
> (Mutual Non-Disclosure Agreement § 1 (emphasis added).)

Thus, there is sufficient evidence for a reasonable jury to conclude that the calibration trade secret was covered by the Non-Disclosure Agreement.[1]

Accu-Sort argues that the Consulting Agreement does not govern AOA's disclosure of the alleged calibration trade secret because the Consulting Agreement expired before the disclosure. (Accu-Sort's Memo in Supp. of Mtn. for Summ. J. at pg. 7.) The executed Change Order "extended the term of the Agreement from February 1, 1995 to January 31, 1996" (Id. at pg. 8.) and therefore, the Consulting Agreement was not in effect when the trade secrets were allegedly revealed by AOA and misappropriated by Accu-Sort in the fall of 1996. (Id.) Accu-Sort contends that the Consulting Agreement by its very terms could only be modified by written

---

[1] The applicability of the Non-Disclosure Agreement was also addressed by the court in its March 30, 2005 Order in at pages 27 and 31.

7

agreement. The Consulting Agreement states that "except as otherwise provided, this Agreement shall not be modified except by written agreement signed on behalf of Federal and the Consultant by their respective authorized officers." ( Ex. E, Accu-Sort's Memo in Supp. of Mtn. for Summ. J.)

FedEx argues that by January 31, 1996, Accu-Sort had not fully performed its obligations under the Consulting Agreement and that the parties continued to perform as if the contract were still in effect. (FedEx Resp. to Mtn. for Summ. J. at 4.)

If the parties to an expired agreement with a definite term continue to perform as if the agreement were still in effect, it is presumed that they are performing under a new contract. Delzell v. Pope, 200 Tenn. 641, 294 S.W.2d 690 (Tenn. 1956); Linbald v. Packridge Health System, Inc. 2003 WL 23004988, *7 (Tenn.Ct.App., 2003).

FedEx provides a list of documents to be offered at trial to establish that the parties extended the contract by their performance. (Ex. G, FedEx Resp. to Mtn. for Summ J.) A reasonable jury could conclude that the emails and memoranda offered by FedEx show that the parties continued to perform under the Consulting Agreement, thereby extending its term.

Accu-Sort argues further that the Information Exchange Agreement ("IEA") between AOA and Accu-Sort required that all "proprietary information" be marked as such. The purported

8

calibration secret was never marked. Therefore, Accu-Sort contends that confidentiality obligations were not triggered. (Accu-Sort Memo. in Supp. of Mtn. for Summ. J. at 11.)  This argument was rejected by the court in its July 6, 2005 Order, which concluded that "FedEx has offered sufficient evidence that Accu-Sort was obligated to keep the calibration technology confidential regardless of whether that information was properly designated for protection under the IEA."(Id. at7.)

Accu-Sort's motion as to confidentiality contract claims is DENIED.

### 2. Ownership Contract Claims

Accu-Sort argues that FedEx has not identified with particularity any materials and/or intellectual property rights that Accu-Sort developed during the life of the Consulting Agreement.  Because the nonmoving party must provide specific evidence, Accu-Sort argues that FedEx has not met its burden, making summary judgment proper. (Accu-Sort Memo. in Supp. of Mtn. for Summ. J. at 14.)  FedEx responds that "FedEx does not intend to pursue damages related to these additional categories unless the trial date is continued."  The trial was continued and is currently set on January 23, 2006, but FedEx has not provided the court with support for its ownership contract claims.

The nonmoving party must present "concrete evidence supporting its claims."  Cloverdale Equip. Co. v. Simon Aerials, Inc., 869

9

F.2d 934, 937 (6th Cir. 1989). The court does not have a duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Thus, FedEx has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

As to the ownership contract claims, FedEx has not provided the court with specific evidence that would support a jury finding in its favor. Therefore, Accu-Sort's motion as to those claims is GRANTED.

**C. FedEx's Breach of Fiduciary Duty Claims**

Accu-Sort argues that it does not owe a fiduciary duty to FedEx. (Accu-Sort Memo. in Supp. of Mtn. for Summ. J. at 17-19.) FedEx contends that the relationship between agent and principal is fiduciary and that Accu-Sort has argued that AOA was an agent of FedEx by virtue of their consulting agreement. If that be true, Accu-Sort would also be FedEx's agent because Accu-Sort's consulting agreement with FedEx is identical to AOA's. (FedEx Resp. to Mtn. for Summ. J. at 7.)

FedEx's argument fails because the Consulting Agreement by its terms provides that "the parties intend that an independent contractor relationship will be created by this Agreement."( Ex. E, Accu-Sort's Memo in Supp. of Mtn. for Summ. J.) Although an agency relationship is fiduciary by its nature, there is no implied fiduciary element in an independent contractor relationship, the

10

relationship to which the parties here explicitly agreed. FedEx and Accu-Sort are sophisticated entities. By law "contracts between sophisticated commercial entities, negotiated at arm's length, do not create fiduciary duties between the parties." See O'Neal v. Burger Chef Sys., Inc.,860 F.2d 1241, 1349 (6th Cir. 1988); Calipari v. Powertel, Inc., 231 F.Supp.2d 734, 736 (W.D. Tenn. 2002).

Under Tennessee law, a fiduciary duty is created "when confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence or exercise dominion over the weaker or dominated party." Edwards v. Travellers Ins. of Hartford, 563 F.2d 105, 115 (6th Cir. 1977) (quoting Iacometti v. Frassinelli, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973). It would be unreasonable to view Accu-Sort as the dominant party, and FedEx does not argue that it is. Neither does FedEx provide a legal basis for the existence of a fiduciary relationship. Thus, Accu-Sort's motion as to breach of fiduciary duty is GRANTED.

**D. FedEx's Claims for Unjust Enrichment**

Accu-Sort argues that claims for both breach of contract and unjust enrichment are barred as a matter of law because FedEx contends that Accu-Sort has been unjustly enriched as a result of a valid contract. (Accu-Sort's Memo in Supp. of Mtn. at 21.) FedEx did not respond to this argument.

The Tennessee Supreme Court has explained that unjust enrichment, quasi contract, *quantum meruit,* and contracts implied at law describe "that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto." Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn. 1966). The essential elements are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such a benefit; and (3) circumstances under which the acceptance of the benefit without payment would be inequitable. Id. at 155. "The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust." Id.

Thus, although it is true that a claim for unjust enrichment is not compatible with a valid contract, Accu-Sort has argued that the Consulting Agreement was not valid when the trade secrets were allegedly misappropriated. (Accu-Sort's Memo. in Supp. of Mtn for Summ. J. at 7-8.) Whether the Consulting Agreement was a valid contract when the misappropriation of trade secrets allegedly occurred is a question of fact. If the Consulting Agreement was not a valid contract, FedEx has a claim for unjust enrichment. Because the validity of the Consulting Agreement is a disputed material fact, Accu-Sort's motion as to unjust enrichment is DENIED.

**IV. Conclusion**

For the foregoing reasons, Accu-Sort's motion for summary judgment as to the Fresnel lens trade secret claim, ownership contract claims, and claim for breach of fiduciary duty are GRANTED.  Accu-Sort's motion for summary judgment on all other grounds is DENIED.


So ORDERED this 20th day of January 2006.


                              s/ SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE